## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| **GLENDA SUE GARDNER,** Individually and As Personal Representative of **The Estate of JACOB GARDNER,** and **DAVID GARDNER,**<br><br>        Plaintiffs,<br><br>**v.**<br><br>**FREDERICK D. FRANKLIN, DONALD W. KLEINE, DOUGLAS COUNTY ATTORNEY'S OFFICE, DOUGLAS COUNTY, NEBRASKA**, and **DOES 1 & 2,**<br><br>        Defendants. | **Civil Action No.:**   4:21-cv-03145 |

## <u>COMPLAINT</u>

David and Glenda Sue Gardner (individually and as the personal representative of the Estate of Jacob Gardner), parents of Jacob Gardner (deceased), (hereinafter, Plaintiffs), by and through their attorneys, and for their claims and causes of action against Defendant Special Prosecutor Frederick D. Franklin (hereinafter Defendant Franklin), Donald W. Kleine (hereinafter Defendant Kleine), and Does 1 and 2, retired Omaha detectives on Defendant Franklin's team, state as follows:

Defendant Franklin conspired with Defendant Kleine and Does 1 and 2, retired Omaha detectives on Defendant Franklin's team, to make false and misleading statements to the media which violated Jacob Gardner's Sixth and Fourteenth Amendment rights to a fair trial and due process of law by implying Mr. Gardner's

1

guilt, implying he was a racist, and inflaming the community regarding the case. These recklessly biased and false statements by Defendant Franklin also caused Jacob Gardner to lose all faith in the justice system and end his own life for fear of an unfair trial. Defendant Kleine and Does 1 and 2 had knowledge that these wrongful statements were going to be made to the media, and negligently or knowingly failed to prevent them. The Douglas County Attorney's Office and Douglas County, Nebraska, created a wrongful, unconstitutional policy in allowing Defendant Franklin to make the wrongful statements which deprived Mr. Gardner of his rights and caused his death.

### BRIEF SUMMARY OF THE CASE

1.      On May 30, 2020, during riots in Omaha, Nebraska, Jacob Gardner shot and killed James Scurlock in self-defense during a fight in front of Gardner's business.

2.      On June 1, 2020, local prosecutors declined to charge Mr. Gardner. However, following protests about this decision, Defendant Franklin, acting as a special prosecutor, was appointed to convene a grand jury.

3.      On September 15, 2020, the Grand Jury charged Mr. Gardner with manslaughter and three other felonies. Upon announcing these charges, Defendant Franklin made statements to the press that were reckless, distorted the truth, or were plainly false regarding Mr. Gardner's intent on the night of May 30, 2020. These statements included implications that Mr. Gardner was a racist, in a time when racial issues are at the forefront of the American public consciousness, including that of

potential jurors. Defendant Franklin also falsely stated that it was Mr. Gardner's own words that showed his intent to kill.

4.      Defendant Kleine instructed Defendant Franklin not to make statements to the media prior to a Grand Jury indictment, but sanctioned the wrongful statements made on September 15, 2020.

5.      Defendant Does 1 and 2, experienced Omaha detectives on Defendant Franklin's team negligently failed to prevent Defendant Franklin from making the wrongful statements on September 15, 2020.

6.      The wrongful statements, which were calculated to create an appearance of guilt surrounding Mr. Gardner, denied him his rights to an impartial jury and due process of law under the Sixth and Fourteenth Amendments.

7.      The denial of a right to a fair trial caused Mr. Gardner to suffer extreme emotional distress. Defendant's statements in the media—which impacted Mr. Gardner's right to a fair trial—caused Mr. Gardner to lose all faith in the justice system and become paranoid and afraid for his life. As a result of this extreme emotional distress, Mr. Gardner committed suicide on September 20, 2020.

8.      Accordingly, this lawsuit asserts claims against Frederick D. Franklin, Donald W. Kleine, and Does 1 and 2 in their official and individual capacities, the Douglas County Attorney's Office, and Douglas County, Nebraska, for violations of Jacob Gardner's Sixth and Fourteenth Amendment rights and for the wrongful death of Jacob Gardner under Nebraska state law, conspiracy to violate these rights, and

for willfully or negligently failing to prevent these wrongful violations of Mr. Gardner's rights.

## **PARTIES**

9.  Plaintiff David Gardner (hereinafter Plaintiff) is an individual and natural person, the father of Jacob Gardner, Jacob Gardner's next of kin, and citizen of the United States.

10.  Plaintiff Glenda Sue Gardner (hereinafter Plaintiff) is an individual and natural person, the mother of Jacob Gardner, Jacob Gardner's next of kin and citizen of the United States.

11.  Plaintiff Glenda Sue Gardner is the personal representative of Jake Gardner's estate further bringing Jake Gardner's survivorship claims on his estate's behalf.

12.  Defendant Frederick D. Franklin (hereinafter Defendant Franklin) is an individual domiciled in the State of Nebraska. Defendant Franklin is being sued in both his individual capacity and official capacity as Special Prosecutor in the State of Nebraska.

13.  Defendant Donald W. Kleine (hereinafter Defendant Kleine) is an individual domiciled in the State of Nebraska. Defendant Kleine is being sued in both his individual capacity and official capacity as Douglas County Attorney in the State of Nebraska.

14.     Defendant Doe 1 is an individual domiciled in the State of Nebraska. Doe 1 is being sued in both his/her individual capacity and official capacity as investigator on Defendant Franklin's team.

15.     Defendant Doe 2 is an individual domiciled in the State of Nebraska. Doe 2 is being sued in both his/her individual capacity and official capacity as investigator on Defendant Franklin's team.

16.     Defendant Douglas County Attorney's Office, an office in Douglas County Nebraska, established a policy or practice through Defendant Kleine and Franklin's actions which contributed to the deprivation of Mr. Gardner's rights.

17.     Douglas County, Nebraska, a county in the state of Nebraska, established a policy or practice through Defendant Kleine and Franklin's actions which contributed to the deprivation of Mr. Gardner's rights.

## JURISDICTION AND VENUE

18.     This Court has federal question subject matter jurisdiction over the Sixth Amendment claim pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the Constitution of the United States and 42 U.S.C. §§ 1983, 1985, and 1986.

19.     This Court has federal question subject matter jurisdiction over the Fourteenth Amendment claim pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the Constitution of the United States and 42 U.S.C. §§ 1983, 1985, and 1986.

5

20.     This Court has supplemental jurisdiction over the wrongful death claim pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1367(a) because it arises from the same case or controversy.

21.     This Court has jurisdiction over the Defendants Franklin, Kleine, and Does 1 and 2, Douglas County Attorney's Office, and Douglas County, Nebraska because, inter alia, they acted under the color of laws, policies, customs and/or practices of the State of Nebraska and/or within the geographic confines of the State of Nebraska.

22.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to this action occurred in this district.

## STATEMENT OF FACTS

23.     The Douglas County Attorney's Office and Douglas County, Nebraska had an established policy or practice of not making statements to the press which would materially impact an individual's right to a fair trial or due process of law.

24.     At all times relevant hereto, Jacob Gardner owned "The Hive," a bar in Omaha, Nebraska.

25.     On May 25, 2020 George Floyd was killed by Police in Minneapolis, sparking nationwide protests, riots, and violence for months during the summer of 2020.

26.     On May 27, 2020, rioters began coming to Omaha, Nebraska, nightly causing millions of dollars of damage; starting fires, breaking windows, looting business, and vandalizing buildings.[1]

27.     On May 30, 2020, Jacob went to The Hive—accompanied by his father and The Hive's bartender—for the sole purpose of lawfully protecting his business from rioters and looters. *See* Neb. Rev. Stat. Ann § 28-1202.

28.     At or about 10:40pm, The Hive's windows were broken by what Jacob believed to be bullets. At least one person tried to unlawfully enter The Hive before being scared out by Jacob. Jacob promptly called the police to report the rioters' unlawful conduct.

29.     At or about 10:42 pm, James Scurlock and other rioters, began throwing objects at The Hive and other nearby bars.

30.     At or about 10:55pm, Gardner, his father, and the bartender exited The Hive believing the rioters had moved on and began photographing the damage that Scurlock and others had inflicted.

31.     Scurlock and other rioters confronted Jacob and assaulted his father. Jacob demanded that Scurlock "get away from [him]." At some point, Jacob was tackled to the ground. He drew his lawfully owned pistol from his waistband and fired a warning shot.

32.     Scurlock then jumped on Jacob's back, put his arm around Jacob's neck, and aggressively choked Jacob for a sustained period of time.

---

[1] https://www.wowt.com/content/news/George-Floyd-protest-in-Omaha-at-72nd-and-Dodge-on-Saturday-May-30-570895831.html.

33.     Scurlock continued choking Jacob for at least eighteen seconds. Jacob can be heard pleading with Scurlock to "get off [him]." Scurlock deliberately disregarded Jacob's pleas, and continued to choke Jacob. Eventually, Jacob, fearing that he was about to lose his consciousness and fearing for his life, fired at Scurlock, who later died.

34.     On June 1, 2020, Defendant Kleine announced that after reviewing the evidence in the case, he concluded that Jacob's shooting of Scurlock was a lawful act of self-defense. Accordingly, the prosecutor's office had no basis on which to bring charges against Jacob.

35.     Following a week of protests about the decision not to prosecute, Defendant Franklin was appointed to convene a Grand Jury and to review the decision not to charge Jacob.

36.     Prior to the return of the indictment, Defendants Franklin and Does 1 and 2 were instructed by Defendant Kleine not to make statements in the media.

37.     On September 15, 2020, a grand jury returned an indictment for four counts: manslaughter, terroristic threats, attempted assault, and use of a weapon to commit a felony.

38.     During the announcement of these charges, Defendant Franklin, with permission from Defendant Kleine, made untrue and biased statements, including selectively revealing information from the grand jury proceedings which were designed to destroy Jacob's image and prejudice the community against him.

Defendant Franklin made these statements despite noting that he could not share evidence presented to the grand jury.

39.     During the September 15, 2020 press conference, Defendant Franklin called the case against Jacob "almost slam dunk."

40.     During the September 15, 2020 press conference, Defendant Franklin falsely stated that Jacob's conduct, including texts and Facebook messages from that night, showed that he had the intent to kill. In fact, Jacob had made no such statements and had already called the police for assistance once before.

41.     During the September 15, 2020 press conference, Defendant Franklin twice falsely stated that the evidence against Jacob came "primarily from Jake Gardner, himself."

42.     During the September 15, 2020 press conference, Defendant Franklin refused to comment on whether or not there were racist comments found on Jacob's phone. He also stated the decision was not made because he "may or may not have been a racist" because "being a racist is not against the law." These statements and omissions combined to falsely imply that Jacob Gardner was a racist. In fact, there were no racist comments on Jacob's phone.

43.     These false and misleading statements to the press tainted the available jury pool to such an extent that it would have been impossible for Jacob to receive a fair trial.

44.     Defendants Kleine and Does 1 and 2 had knowledge of Defendant Franklin's intent to make false and misleading statements to the media on September

15, 2020 and willfully or negligently failed to prevent Defendant Franklin from making such wrongful statements.

45.     Defendants Douglas County, Nebraska and the Douglas County Attorney's Office allowed a new policy or practice to be created through Defendant Kleine and Defendant Franklin, which allowed for unconstitutional actions against defendants in criminal cases which deny citizens of Douglas County the right to an impartial jury or due process of law.

46.     Prior to the September 15 press conference, Jacob was hopeful that he would be cleared and was making plans for the future.

47.     Following the press conference, Jacob received more than 1,600 death threats. His family was also forced to move out of state for fear of their own safety.

48.     The statements made during the press conference caused Jacob to be "surrounded by a dark cloud" of depression and be in extreme emotional distress regarding both the loss of life that had occurred and his fears for a fair trial and his own safety and that of his family.

49.     Mr. Gardner stated that he was more nervous than when he was in combat in the military.

50.     He was dismayed by the statements that it was a "slam dunk" case and was reasonably fearful that people were going to hurt him or his family.

51.     Immediately after the press conference, Jacob told friends he had "lost all faith in the justice system" and should "walk into the woods and kill [himself]."

52.    As a result of the extreme mental anguish suffered by Jacob because of the false statements made by Defendant Franklin and his loss of a chance for an impartial jury, Mr. Gardner committed suicide on September 20, 2020.

53.    As a combat war Veteran suffering from PTSD and Traumatic Brain Injury, Jacob was especially vulnerable to emotional trauma.

54.    The Defendants are still liable for damages when a preexisting condition results in a greater harm than expected. *See Kelly v. Cutch, Inc.*, 27 Neb. App. 921, 927, 938 N.W.2d 102, 107 (2019).

55.    It is reasonably foreseeable that a prosecutor's publicly making false or misleading statements about a defendant, particularly in connection to a highly publicized criminal case, can cause such defendant severe mental and emotional distress, and that such distress can cause such defendant to engage in self-harm, up to and including suicide.[2]

56.    Defendant Franklin knew or should have known that publicly making false or misleading statements about a defendant, particularly in connection to a highly publicized criminal case, can cause such defendant severe mental and

---

[2] Brooks, Samantha K, and Neil Greenberg. "Psychological Impact of Being Wrongfully Accused of Criminal Offences: A Systematic Literature Review." *Medicine, Science and the Law* 61, no. 1 (January 2021): 44–54. https://doi.org/10.1177/0025802420949069.
"Wrongfully Convicted Former Prisoner Commits Suicide. *Prison Legal News*, 3 June 2016, www.prisonlegalnews.org/news/2016/jun/3/wrongfully-convicted-former-prisoner-commits-suicide/.

Brennan, Christine. "Former Figure Skater's Family Blamed Suicide on False Accusation." *USA Today*, Gannett Satellite Information Network, 28 Mar. 2019, www.usatoday.com/story/sports/olympics/2019/03/28/former-figure-skaters-family-blamed-suicide-false-accusation/3300924002/.

Schwirtz, Michael, and Michael Winerip. "Kalief Browder, Held at Rikers Island for 3 Years Without Trial, Commits Suicide." *The New York Times*, The New York Times, 8 June 2015, www.nytimes.com/2015/06/09/nyregion/kalief-browder-held-at-rikers-island-for-3-years-without-trial-commits-suicide.html.

emotional distress, and that such distress can cause such defendant to engage in self-harm, up to and including suicide.

57.   Plaintiffs have suffered great loss of consortium, society, comfort, and companionship, pecuniary damages, mental distress and emotional damages due to the loss of their son.

## FIRST CAUSE OF ACTION

**By Plaintiffs as Representatives of Jake Gardner's Estate Against All Defendants for Conspiring to Deprive Mr. Gardner of His Right to a Fair Trial and Due Process**

58.   Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

59.   Defendants were acting under color of law as Prosecutors and Investigators for the State of Nebraska, and against the policy or practice of Douglas County and the Douglas County Attorney's Office when the statements were made at the September 15, 2020 press conference.

60.   42 U.S.C. § 1985(3) provides a cause of action whenever two or more persons conspire to cause a person to be "deprived of having and exercising any right or privilege of a citizen of the United States".

61.   Local Governments, including counties and offices, are persons liable for Constitutional deprivations that result as a matter of policy or practice. S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

62.   Policies may be set by those "whose edicts or acts may fairly be said to represent official policy" or those who speak with "final policymaking authority". S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

63.     Defendant's Franklin and Kleine represent official policy and have final policymaking authority, attaching their wrongful acts as policy for Douglas County, Nebraska and the Douglas County Attorney's Office.

64.     Defendants were aware of and discussed Defendant Franklin's statements to be made to the press on September 15, 2020, which were designed to and did cause Mr. Gardner to be deprived of his Sixth and Fourteenth Amendment rights.

65.     Defendant Franklin's statements were an engagement in and furtherance of the conspiracy to deprive Mr. Gardner of his rights.

66.     The successfully completed conspiracy to deprive Mr. Gardner of his Constitutional rights was also the actual, foreseeable, and proximate cause of Mr. Gardner's wrongful death.

67.     WHEREFORE, the Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, reasonable attorney fees pursuant to 42 U.S.C. § 1988, the Equal Access to Justice Act, the Federal Tort Claims Act and applicable case law, reasonable litigation costs, court costs, interest and any other relief as this Court deems just and appropriate under the circumstances.

## SECOND CAUSE OF ACTION

**By Plaintiffs as Representatives of Jake Gardner's Estate Against All Defendants for Deprivation of Sixth Amendment Rights**

68.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

13

69.    Defendant Franklin was acting under color of law in his capacity as Special Prosecutor in Douglas County, Nebraska when he made the statements at the September 15, 2020 press conference.

70.    The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395 (2020).

71.    Local Governments, including counties and offices, are persons liable for Constitutional deprivations that result as a matter of policy or practice. S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

72.    Policies may be set by those "whose edicts or acts may fairly be said to represent official policy" or those who speak with "final policymaking authority". S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

73.    Defendant's Franklin and Kleine represent official policy and have final policymaking authority, attaching their wrongful acts as policy for Douglas County, Nebraska and the Douglas County Attorney's Office.

74.    Defendants knew or should have known that the statements made to the media were likely to taint the jury pool with bias against Mr. Gardner. A tainted jury pool would deny Mr. Gardner a right to an impartial jury under the Sixth Amendment to the U.S. Constitution.

75.     The bias of the jury can be presumed where the circumstances are egregious or extreme. *See State v. Harris,* 264 Neb. 856, 865, 652 N.W.2d 585, 591 (2002); *Sanders v. Norris,* 529 F.3d 787, 792 (8th Cir. 2008); *United States v. Tucker,* 243 F.3d 499, 509 (8th Cir. 2001);

76.     Defendant's statements to the media which denied Mr. Gardner's right to an impartial jury are not entitled to prosecutorial immunity because they have no functional ties to the judicial function of the prosecutor. *Buckley v. Fitzsimmons,* 509 U.S. 259, 276-77, 113 S. Ct. 2606, 2617-18 (1993).

77.     WHEREFORE, the Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, reasonable attorney fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act, the Federal Tort Claims Act and applicable case law, reasonable litigation costs, court costs, interest and any other relief as this Court deems just and appropriate under the circumstances.

## **THIRD CAUSE OF ACTION**

### **By Plaintiffs as Representatives of Jake Gardner's Estate Against All Defendants for Deprivation of Fourteenth Amendment Rights**

78.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

79.     Defendant Franklin was acting under color of law in his capacity as Special Prosecutor in Douglas County, Nebraska when he made the statements at the September 15, 2020 press conference.

80.     The Fourteenth Amendment provides that no state shall deprive of life, liberty, or property without due process of law. U.S. CONST. amend. XIV.

81.     Defendant Franklin knew or should have known that his reckless, and false statements to the media would deprive Mr. Gardner of due process by tainting the jury and inflaming the community against him.

82.     Defendant Franklin's statements to the media which denied right due process of law are not entitled to prosecutorial immunity because they have no functional ties to the judicial function of the prosecutor. *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-77, 113 S. Ct. 2606, 2617-18 (1993).

83.     Local Governments, including counties and offices, are persons liable for Constitutional deprivations that result as a matter of policy or practice. S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

84.     Policies may be set by those "whose edicts or acts may fairly be said to represent official policy" or those who speak with "final policymaking authority". S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

85.     Defendant's Franklin and Kleine represent official policy and have final policymaking authority, attaching their wrongful acts as policy for Douglas County, Nebraska and the Douglas County Attorney's Office.

86.     WHEREFORE, the Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, reasonable attorney fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act, the Federal Tort Claims Act and applicable case law, reasonable litigation costs, court costs, interest and any other relief as this Court deems just and appropriate under the circumstances.

**FOURTH CAUSE OF ACTION**

**Plaintiffs as Representatives of Jake Gardner's Estate**
**Constitutional Claim for *Brady* Rule Violation Against All Defendants**
**Pursuant to *Bivens v. Six Unknown Names Agents of Federal Bureau of***
***Narcotics***

87.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

88.     As alleged in greater detail above, Kleine and Franklin intentionally and maliciously withheld exculpatory evidence from Jake Gardner in violation of the Jake's constitutional protection stemming from the *Brady* Rule.

89.     The *Brady* Rule requires a prosecutor to disclose potential exculpatory evidence to the defendant in a criminal case. The *Brady* obligation is not a mere prophylactic designed to protect a constitutional right; it is itself a component of the due process owed to criminal defendants under the U.S. Constitution. The violation of the *Brady* obligation is itself a constitutional violation.

90.     Defendants Kleine and Franklin acted under color of law and acted or purported to act in the performance of official duties under federal law.

91.     The actions of Kleine and Franklin violated established constitutional or other rights of which they knew, or reasonably should have known.

92.     As a direct result of the actions of Defendants Kleine and Franklin, Jake Gardner sustained damages as alleged above.

93.     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, reasonable attorney fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act, the Federal Tort Claims Act and

applicable case law, reasonable litigation costs, court costs, interest and any other relief as this Court deems just and appropriate under the circumstances.

## FIFTH CAUSE OF ACTION

### By Plaintiffs Against All Defendants for Wrongful Death

94.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

95.     Under Nebraska state law, whenever a person's death is caused by the wrongful, or neglectful act of another, that person is liable for damages for said death. R.R.S. Neb. § 30-809.

96.     Plaintiffs are Jake Gardner's next of kin satisfying the standing requirement for wrongful death under Nebraska law. R.R.S. Neb. § 30-810.

97.     Defendant Franklin's wrongful and reckless statements to the media were the foreseeable proximate cause of Jacob Gardner's suicide on September 20, 2020.

98.     Defendant Franklin's statements to the media which wrongfully caused the death of Jacob Gardner are not entitled to prosecutorial immunity because they have no functional ties to the judicial function of the prosecutor. *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-77, 113 S. Ct. 2606, 2617-18 (1993).

99.     Local Governments, including counties and offices, are persons liable for Constitutional deprivations that result as a matter of policy or practice. S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

100.   Policies may be set by those "whose edicts or acts may fairly be said to represent official policy" or those who speak with "final policymaking authority". S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

101.   Defendants Franklin and Kleine represent official policy and have final policymaking authority, attaching their wrongful acts as policy for Douglas County, Nebraska and the Douglas County Attorney's Office.

102.   Plaintiffs have suffered loss of consortium, society, comfort, and companionship, extreme mental distress, pecuniary, and psychological harm as a result of Defendant's actions which caused the death of Jake Gardner.

103.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, reasonable attorney fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act, the Federal Tort Claims Act and applicable case law, reasonable litigation costs, court costs, interest and any other relief as this Court deems just and appropriate under the circumstances.

## SIXTH CAUSE OF ACTION

**By Plaintiffs as Representatives of Jake Gardner's Estate Against Defendants Kleine and Does 1 and 2, Douglas County, Nebraska, and the Douglas County Attorney's Office for Failing to Prevent the Deprivation of Jake Gardner's Rights**

104.   Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if fully set forth herein.

105.   42 U.S.C 1986 provides a cause of action against any person who, with knowledge of a conspiracy to deprive an individual or rights or privileges of a United States citizen, who has the power to prevent the wrong, neglects or fails to do so.

106.   Defendant Kleine was aware of, and partook in the conspiracy to deprive Jake Gardner his rights as a United States citizen of the Sixth and Fourteenth Amendment through the statements to the press on September 15, 2020.

107.   Defendant Doe 1 was aware of, and partook in the conspiracy to deprive Jake Gardner his rights as a United States citizen of the Sixth and Fourteenth Amendment through the statements to the press on September 15, 2020.

108.   Defendant Doe 2 was aware of, and partook in the conspiracy to deprive Jake Gardner his rights as a United States citizen of the Sixth and Fourteenth Amendment through the statements to the press on September 15, 2020.

109.   Defendant Kleine had previously instructed Defendant Franklin not to make statements to the press and Defendant Franklin heeded those instructions. Thus, Defendant Kleine had the power to prevent these statements which were wrongful acts.

110.   Defendant Does 1 and 2, as members on Defendant Franklin's team, had the power to advise and prevent Defendant Franklin from making the wrongful statements to the press.

111.   All Defendants willfully, or negligently failed to prevent the wrongful statements to the press despite having the power to do so.

112.   Local Governments, including counties and offices, are persons liable for Constitutional deprivations that result as a matter of policy or practice. S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

113.   Policies may be set by those "whose edicts or acts may fairly be said to represent official policy" or those who speak with "final policymaking authority". S*ee McMillian v. Monroe Cty.*, 520 U.S. 781, 784, 117 S. Ct. 1734, 1736 (1997).

114.   Defendant Kleine represent official policy and have final policymaking authority, attaching their wrongful acts as policy for Douglas County, Nebraska and the Douglas County Attorney's Office.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, reasonable attorney fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act, the Federal Tort Claims Act and applicable case law, reasonable litigation costs, court costs, interest and any other relief as this Court deems just and appropriate under the circumstances.

## PRAYER FOR RELIEF

Plaintiffs demand judgment against Defendants as follows:

    i.    An award of compensatory, special and punitive damages in appropriate amounts to be established at trial;

    ii.    An award of costs associated with this action;

    iii.    And such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Date:  July 26, 2021                          Respectfully Submitted,

                                              **PIERCE BAINBRIDGE P.C.**


                                              _____
                                              John M. Pierce
                                              355 S. Grand Avenue, 44th Floor
                                              Los Angeles, CA 90071
                                              (213) 400-0725
                                              jpierce@piercebainbridge.com

                                              *Attorneys for Plaintiffs*
                                              *Glenda Sue Gardner, individually and as*
                                              *Personal Representative of the Estate of*
                                              *Jacob Gardner, and David Gardner*