## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **GLENDA SUE GARDNER,** | ) | Case No: 4:21-cv-03145 |
| **Individually and as Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **JACOB GARDNER, and DAVID** | ) | |
| **GARDNER,** | ) | |
| | ) | |
| Plaintiffs, | ) | **BRIEF IN SUPPORT OF COUNTY** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| v. | ) | |
| | ) | |
| **FREDERICK D. FRANKLIN, DONALD** | ) | |
| **W. KLEINE, DOUGLAS COUNTY** | ) | |
| **ATTORNEY'S OFFICE, DOUGLAS** | ) | |
| **COUNTY, NEBRASKA and DOES 1 &** | ) | |
| **2,** | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiffs David Gardner's and Glenda Sue Gardner's (suing individually and as personal representative of the Estate of Jacob Gardner) (collectively "Plaintiffs") factual allegations do not support their legal conclusions that Defendants Donald W. Kleine ("Kleine") and the County of Douglas, Nebraska ("Douglas County") violated Jacob Gardner's ("Gardner") rights to exculpatory evidence and trial by impartial jurors. Unadorned accusations of withholding exculpatory evidence during Grand Jury proceedings, conspiring with Defendant Frederick Franklin ("Franklin") to deprive Gardner of impartial jurors, and failing to stop Franklin's juror-biasing comments when he announced Gardner's indictment yield no constitutional injury without Gardner standing trial. Constitutional claims against Douglas County fail without underlying constitutional violations; and also because they are only generic recitations mirroring avenues for suing local governments pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978). Finally, Plaintiffs' state-law wrongful death claim fails for a number of reasons, including

1

4:21-cv-03145-JMG-CRZ   Doc # 13   Filed: 11/12/21   Page 2 of 26 - Page ID # 42


the fact that it arises out of conduct for which the Nebraska Legislature expressly preserved sovereign immunity, depriving this Court of subject matter jurisdiction of the claim.[1] [2]

## LEGAL STANDARD

In evaluating Fed. R. Civ. P. 12(b)(6) challenges, courts follow a two-pronged analysis. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009). First, the Court divides the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal conclusions should be disregarded. *Id.* (holding that legal conclusions and threadbare recitations of the elements of a cause of action supported by mere conclusory statements are not entitled to a presumption of truth when considering the sufficiency of a complaint on a motion to dismiss for failure to state a claim upon which relief can be granted). Second, the Court reviews factual allegations for facial plausibility. *Id.*; see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007) (to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."). "The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully" or "more than a mere possibility of

---

[1] Plaintiffs are presently subject to an Order to Show Cause regarding failure to serve process. Doc. No. 11. Plaintiffs requested summons only for Kleine. Doc. No. 7. On October 22, 2021, summons and a partial copy of the Complaint were left with Kleine. In the interests of judicial economy, all County Defendants file this responsive pleading to address all of Plaintiffs' claims before, if necessary, filing a dispositive motion demonstrating that Plaintiffs' state-law claim cannot move forward due to their failure to comply with a statutory condition precedent to filing suit.

[2] Claims against the Douglas County Attorney's Office ("DCAO") must be dismissed as DCAO is not subject to suit as a matter of law. *See* Compl. ¶¶8, 16, 21, 23, 45, 59, 63, 73, 85, 101, 114. Neb. Rev. Stat. § 23-101 provides that a county may sue and be sued in its own name, "*but the same is not true of county offices or departments*." *Parsons v. McCann*, 138 F.Supp.3d 1086, 1097-98 (D.Neb. 2015) (emphasis in original) (dismissing Omaha Police Department and DCAO as defendants as they are not capable of being sued) (collecting cases from Nebraska state and federal courts). Furthermore, "municipal departments...are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." *Cotton v. Douglas County Department of Corrections*, 2016 WL 5816993, at *4 (D.Neb. Oct. 5, 2016) (collecting cases). Therefore, this Court should dismiss DCAO and construe allegations against it as against Douglas County.

misconduct." *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. 1937. Although a complaint need not contain "detailed factual allegations," it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

"The sovereign immunity of the State and its political subdivisions is not a matter of judicial fiat; it is constitutional." *Edwards v. Douglas County*, 308 Neb. 259, 265, 953 N.W.2d 744, 749 (2021) (citing Neb. Const. art. V, § 22, "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought."). A political subdivision such as Douglas County has no liability for the torts of its officers, agents, or employees except to the extent provided in the Political Subdivisions Tort Claims Act ("PSTCA"). *Id*. at 266, 953 N.W.2d at 750. "Where a claim against an employee of a political subdivision is based upon acts or omissions occurring within the scope of employment, it is governed by the provisions of the PSTCA." *McKenna v. Julian*, 277 Neb. 522, 530, 763 N.W.2d 384, 391 (2009). Neb. Rev. Stat. § 13-910(7) of the PSTCA expressly exempts certain tort claims from the PSTCA's waiver of sovereign immunity, and when one of these exemptions applies, there is a lack of subject matter jurisdiction. *Edwards, supra*, 308 Neb. at 266-67, 953 N.W.2d at 750. "Whether the allegations made by a plaintiff set forth claims which are precluded by exemptions under the PSTCA presents a question of law." *Id.* at 264, 953 N.W.2d at 749.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE SIXTH AMENDMENT.

Plaintiffs' First, Second, Third,[3] and Sixth Causes of Action each hinge upon Gardner's Sixth Amendment right to trial by an impartial jury. Compl. ¶6 (theorizing that Franklin's public statements were calculated to create an appearance of guilt, thereby denying Gardner his rights to an impartial jury and due process of law under the Sixth and Fourteenth Amendments), ¶7 (concluding that Franklin's statements denied Gardner a fair trial), ¶43 (Franklin's statements tainted the available jury pool), ¶52 (loss of chance to impartial jury prompted Gardener's suicide), ¶¶64, 74, 81, 106-08, and 110-11 (September 15, 2020 statements to press denied Gardner his Sixth and Fourteenth Amendment rights). These claims fail for lack of an underlying constitutional violation and because the Complaint establishes Kleine's qualified immunity.

In 2020, efforts to mitigate the impact of pretrial publicity – including efforts during and after trial – were considerations essential to determining whether pretrial publicity violated an accused's right to trial by impartial jurors. No viable claim is stated when the Complaint says nothing about mitigatory measures or about Gardner standing trial and being convicted by biased jurors who were irredeemably tainted by Franklin's public commentary. Given the clarity of the law on this point on September 15, 2020, no reasonable official in Kleine's position would have

---

[3] Plaintiffs bring the Third Cause of Action under the Fourteenth Amendment, but specify that Franklin's "false statements to the media would deprive Mr. Gardner of due process by tainting the jury and inflaming the community against him." Compl. ¶81. Thus, Plaintiffs' purported Fourteenth Amendment claim duplicates their Causes of Action brought under the Sixth Amendment. *See Pruett v. Norris*, 153 F.3d 579, 584 (8th Cir. 1998).

known that failing to prevent the public comments of an appointed special prosecutor[4] violated Gardner's right to trial by impartial jurors. As such, Plaintiffs' First, Second, Third, and Sixth Causes of Action must be dismissed.

### A. Gardner's Sixth Amendment Right to Trial by an Impartial Jury Never Ripened into a Claim to Relief Absent Trial.

Claims asserting violation of the Sixth Amendment right to an impartial jury are not ripe for adjudication when a plaintiff has not been charged or subjected to a criminal trial. *See Kaylor v. Fields*, 661 F.2d 1177, 1181 (8th Cir. 1981). *Kaylor* began with a district attorney's investigation into an alleged misuse of county property. Three of the people under investigation sued for violations of their civil rights, specifically alleging that during the course of his investigation, the district attorney "disseminated accusations to the press in an attempt to deprive plaintiffs of their right to an impartial jury panel in the event of their being prosecuted." 661 F.2d at 1180. Accepting that this accusation at least implicated a constitutional right (other allegations did not), the Eighth Circuit nevertheless noted that "[t]he claim is problematic in other respects." *Id.* The court's conclusion vis a vis the problematic "other respects" shows why every claim hinging upon Gardner's right to trial by impartial jurors cannot move forward:

> "To the extent that this allegation presents an issue of whether Judge Kaylor is being denied a right under the Sixth Amendment, that issue is not ripe for adjudication in this action. For an issue to be ripe for adjudication we must be

---

[4] Plaintiffs judicially admit that Franklin alone made the public commentary and that he was a special prosecutor. Compl. p. 1 and ¶¶2, 12, 69, 79. State law controls the role of a special prosecutor. *See* Neb. Rev. Stat. § 29-1408 (the State can appoint a special prosecutor to appear and act in place of the county attorney before a grand jury; the county attorney shall be excluded from the presence of the grand jury during all proceedings which relate to the subject matter for which the special prosecutor was appointed); Neb. Rev. Stat. § 29-1409 (if a special prosecutor is appointed for purposes of a grand jury, then trials of indictments growing out of such matters shall be conducted by the appointed special prosecutor in all respects as though he were the county attorney). Only legal conclusions couched as factual allegations grant Kleine or Douglas County any ability to govern Franklin's public comments or his prosecution of Gardner's criminal charges, and this Court is not obligated to accept these as true. *Iqbal, supra*, 556 U.S. at 678-79, 129 S.Ct. 1937.

assured that the plaintiff will 'sustain an immediate injury ... and that such injury would be redressed by the relief requested ....' *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). We have no such assurance here. <u>The right to be tried by an impartial jury, by its very nature, can only be afforded or denied in the context of a criminal trial.</u> Judge Kaylor, to our knowledge, has not been charged with any crime, <u>and until he is subjected to a criminal trial, we can only speculate as to whether his Sixth Amendment right is being denied.</u> If he is charged, of course, he has ample means, including voir dire and a motion for change of venue, by which to vindicate this right in the state courts."

*Id.* at 1181 (underlining added).

It is speculative to conclude that Gardner's right to trial by impartial jurors was denied without factual content reasonably inferring he ever stood trial before jurors who were not impartial. "The Due Process Clause of the Fourteenth Amendment guarantees the Sixth Amendment right of jury trial in state criminal prosecutions." *Pruett v. Norris*, 153 F.3d 579, 584 (8th Cir. 1998) (citing *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444 (1968)). "This right includes the right to trial by an impartial jury." *Id*. (citing *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639 (1961)). When "[t]he right to be tried by an impartial jury, by its very nature, can only be afforded or denied in the context of a criminal trial" (*Kaylor, supra*, 661 F.2d at 1181), Plaintiffs' omission of vital contextual content describing any trial – let alone a trial to jurors tainted by pretrial public commentary – yields, at most, an inchoate claim that his suicide prevented from ripening.

"The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.' " *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (internal quotation omitted). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. U.S*., 523 U.S. 296, 300, 118 S.Ct. 1257 (1998) (internal quotation omitted). At best, the factual content of Plaintiffs' Complaint leaves Gardner's unfair trial no more than a contingent future event that may not have

6

occurred as anticipated, or may not have occurred at all. Plaintiffs' First, Second, Third, and Sixth Causes of Action must be dismissed because each hinges upon a Sixth Amendment right to trial by an impartial jury that never ripened.

### B. Gardner's Sixth Amendment Right to Trial by an Impartial Jury Was Never Violated.

Controlling authority squarely contradicts the proposition that adverse pretrial publicity generated by Franklin, standing alone, worked a denial of Gardner's right to trial by impartial jurors. The Supreme Court has held that "pretrial publicity even pervasive, adverse publicity does not inevitably lead to an unfair trial." *Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 555 and 565, 96 S.Ct. 2791 (1976) (further holding, "We have noted earlier that pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial."); *see also Skilling v. U.S.*, 561 U.S. 358, 380, 130 S.Ct. 2896 (2010) (reiterating the Supreme Court's previous rejection of "…the proposition that juror exposure to ... news accounts of the crime ... alone presumptively deprives the defendant of due process.") (internal quotation omitted). Plaintiffs' First, Second, Third, and Sixth Causes of Action ignore controlling law and only state plausible claims to relief if this Court accepts that Franklin's public statements *automatically* deprived Gardner of impartial jurors.

Viewing Franklin's statements in a vacuum wholly discounts the essential role mitigatory efforts have in determining whether pretrial publicity violates an accused's right to an impartial jury. *Nebraska Press Ass'n., supra*, 427 U.S. at 555, 96 S.Ct. 2791 (measures a judge takes or fails to take to mitigate the effects of pretrial publicity may well determine whether the defendant receives a trial consistent with the requirements of due process); *Kaylor, supra,* 661 F.2d at 1181 ("If he is charged, of course, he has ample means, including voir dire and a motion for change of venue, by which to vindicate this right in the state courts."). Here, no facts reasonably infer that

7

Gardner availed himself of any of the ample means by which he could have vindicated his Sixth Amendment right to trial before impartial jurors, so there is no factual basis for concluding that this right was ever violated. Barring an underlying constitutional violation, § 1983 relief is unavailable. *McKay v. City of St. Louis*, 960 F.3d 1094, 1099 (8th Cir. 2020) (elements of § 1983 claim include deprivation of a constitutional right).

### C. Qualified Immunity Defeats Any Claim against Kleine Stemming from an Alleged Violation of Gardner's Fair Trial Right.

A complaint facially establishing qualified immunity is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6), which is the case here because Plaintiffs' First, Second, Third, and Sixth Causes of Action cannot overcome Kleine's qualified immunity. *See Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (complaint properly dismissed when it establishes qualified immunity). First, courts ask whether the facts taken in a light most favorable to a plaintiff make out a violation of a constitutional right (*Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017)), and Sections I(A)&(B) show that the answer to this question is "no." Practically speaking, the qualified immunity analysis may end at this point. *Id.* (qualified immunity steps may be considered in any order, but the answer to both must be yes or the defendant is entitled to qualified immunity).

Plaintiffs cannot clear the second step of the qualified immunity analysis in which courts ask whether the contours of the right allegedly violated were sufficiently clear for every reasonable official in the defendant's position to understand that what she or he is alleged to have done violated the right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074 (2011). The violative nature of a defendant's particular conduct may become clearly established through controlling authority or through a robust consensus of cases of persuasive authority. *Id.* at 741-42, 131 S.Ct. 2074. Although Plaintiffs bear the burden of proving that Kleine violated clearly established law (*Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013)), they cannot do so by asserting a right to be

8

free of any pretrial publicity wholly independent of any mitigatory efforts *and* of any actual criminal trial and conviction. Every reasonable official in Kleine's position would know that *Kaylor, supra*, remains law in the Eighth Circuit, and holds "[t]he right to be tried by an impartial jury, by its very nature, can only be afforded or denied in the context of a criminal trial." 661 F.2d at 1181. If it exists at all, the freestanding right to be free of any pretrial publicity was not clearly established when Kleine allegedly failed to prevent Franklin's public comments.[5] Plaintiffs' Complaint does not overcome either step of the two-part inquiry courts employ when weighing the qualified immunity defense, so qualified immunity defeats Plaintiffs' First, Second, Third, and Sixth Causes of Action as to Kleine.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER 42 U.S.C. § 1985(3).

Plaintiffs' First Cause of Action is brought pursuant to 42 U.S.C. § 1985(3) (Compl. ¶60), which imposes liability on two or more persons who "conspire…for the purpose of depriving…any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). To establish a § 1985(3) claim, Plaintiffs must prove: (1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive him of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury. *McDonald v. City of St. Paul*, 679 F.3d 698, 706 (8th Cir. 2012). Plaintiffs must also show an underlying constitutional violation and that the conspiracy was fueled by some "class-based, invidiously discriminatory animus." *A.J. ex rel. Dixon v. Tanksley*, 822 F.3d 437,

---

[5] Plaintiffs imply a "failure to intervene" claim against Kleine, but the duty of intervention is narrowly tailored and has no application to preventing an independent Special Prosecutor's pretrial public commentary. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (duty to intervene outside of excessive force context is not clearly established); *Hess, supra*, 714 F.3d at 1052 (confirming *Livers's* cabining of the duty of intervention to the excessive force context); *Andrews v. Shafer*, 888 F.3d 981, 984 fn 4 (8th Cir. 2018) (relying upon *Hess* to affirm grant of qualified immunity in action that did not allege excessive force, stating "We have held there is no clearly established law regarding a duty to intervene outside of the excessive force context.").

444 (8th Cir. 2016) (internal citation omitted); *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 113 S.Ct. 753 (1993)). Here, Plaintiffs fail to state a claim for relief as to their civil conspiracy claim because they have not plead facts establishing any of these underlying requirements necessary for a § 1985(3) civil conspiracy claim.

### A. Plaintiffs fail to demonstrate any underlying constitutional violation so their § 1985(3) civil conspiracy claim must fail.

Plaintiffs allege a conspiracy to deprive Gardner of his Sixth and Fourteenth Amendment rights. Compl. ¶64. Specifically, Plaintiffs assert a deprivation of "[Gardner's] rights to an impartial jury and due process of law." Compl. ¶6. Neither of those assertions can establish an underlying constitutional violation for purposes of a civil conspiracy claim because (1) there can be no deprivation of Gardner's right to an impartial jury without a trial and conviction, and (2) Plaintiffs' claim that Defendants conspired to deprive Gardner of due process is not actionable under § 1985(3).

To succeed on their conspiracy claim, Plaintiffs must demonstrate that the alleged conspiracy to deprive Gardner of his right to an impartial jury in fact had that result. *A.J. ex rel. Dixon*, *supra*, 822 F.3d at 444 (defendants must have committed an underlying constitutional violation to be liable for civil conspiracy). As addressed in Section I, *supra*, without a trial, there can be no conviction, and this Court can only speculate as to whether Gardner's Sixth Amendment right might have been denied during a trial that did not occur. *See Kaylor*, 661 F.2d at 1181 (court can only speculate on Sixth Amendment right where plaintiff was not subjected to a criminal trial). No jury was ever empaneled, so Plaintiff cannot establish the alleged underlying constitutional violation that he was denied the right to an impartial jury.

Plaintiffs' assertion of deprivation of due process is also insufficient to plead an underlying constitutional violation for purposes of their § 1985(3) civil conspiracy claim because this law prohibits conspiracies to deny equal protection of laws (not due process). *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376, 99 S.Ct. 2345 (1979) (holding that § 1985(3) is a purely remedial statute, providing a cause of action for violations of *only* the rights it designates - equal protection of the laws or equal privileges and immunities under the laws); *see also Lewis v. Pearson Found., Inc.*, 908 F.2d 318, 322 (8th Cir. 1990), on reh'g, 917 F.2d 1077 (8th Cir. 1990) (holding that "to be actionable under 42 U.S.C. § 1985(3), a conspiracy must 'aim at a deprivation of the equal enjoyment of rights secured by the law to all.'" (quoting *United Broth. of Carpenters and Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352 (1983))). Here, Plaintiffs fail to assert any violation of equal protection for purposes of § 1985(3). The words equal or equality are not present anywhere in the Complaint except for references to the Equal Access to Justice Act. Plaintiffs do not allege that Gardner was treated differently based on his membership in a protected class, so the § 1985(3) claim does not "implicate basic equal protection concerns." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604, 128 S.Ct. 2146, 2154 (2008); *see also Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998) (plaintiff must establish that he was treated differently from others similarly situated to him for an equal protection claim); *Batra v. Board of Regents*, 79 F.3d 717, 721-22 (8th Cir. 1996) (key requirement for an equal protection claim "is that plaintiff allege…unlawful, purposeful discrimination"). Plaintiffs have not sufficiently pled a violation of equal protection. Therefore, Plaintiffs cannot demonstrate an underlying constitution violation to support their civil conspiracy claim in the First Cause of Action.

**B. Plaintiffs fail to sufficiently allege the existence of a class-based discriminatory animus.**

Even if this Court were to find that there was a constitutional violation, Plaintiffs failed to show that the alleged "conspiracy was fueled by some class-based, invidiously discriminatory animus." *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1224 (8th Cir. 2015) (internal citations omitted). "If plaintiffs are pleading a violation of their Constitutional rights under § 1985(3), they must identify themselves as a member of a protected class, or their claim must be dismissed." *Stanko v. Bosselman*, 8:17CV3151, 2018 WL 11218797, at \*7 (D.Neb. Mar. 29, 2018); *see also Jacobsen v. Dep't of Transp.*, 332 F.Supp.2d 1217, 1223-24 (N.D. Iowa 2004) (where the complaint does not suggest the alleged conspiracy was motivated by an invidious, class-based animus and instead merely alleges that defendants conspired to cause plaintiff harm, the § 1985(3) claim must be denied), *aff'd*, 450 F.3d 778 (8th Cir. 2006). Under this case law, Plaintiffs' Complaint must be dismissed. Plaintiffs do not allege that Gardner was a member of a protected class. Plaintiffs do not allege a class-based invidiously discriminatory animus or facts supporting such an allegation and, therefore, fail to state a plausible claim under § 1985(3). *Carpenter Outdoor Advert. Co. v. City of Fenton*, 251 F.3d 686, 690 (8th Cir. 2001) (affirming dismissal for failure to state a claim under § 1985(3) where plaintiff did "not allege a class-based invidiously discriminatory animus or facts that would support such an allegation"). Thus, Plaintiffs' civil conspiracy claim should be dismissed.

### C. Plaintiffs fail to sufficiently allege the existence of an agreement between Kleine and Franklin.

Even if this Court were to find that there was a constitutional violation *and* Plaintiffs sufficiently alleged a class-based discriminatory animus, Plaintiffs have failed to sufficiently allege the existence an agreement between Kleine and Franklin as well as specific facts demonstrating an intent to conspire to deprive Gardner of his rights. To state a claim for conspiracy under § 1985, "a plaintiff must allege with particularity and specifically demonstrate with material

12

facts that the defendants reached an agreement. This standard requires that allegations of a conspiracy be pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." *Kelly v. City of Omaha*, 813 F.3d 1070, 1077-78 (8th Cir. 2016) (internal quotations omitted). "Mere speculation or conjecture is insufficient to prove a civil conspiracy." *Mendoza v. U.S. Immig. and Cust. Enf't*, 849 F.3d 408, 421 (8th Cir. 2017).

Here, Plaintiffs allege that Kleine instructed Franklin to *not* make statements in the media prior to a grand jury indictment. Compl. ¶¶4 and 36. Plaintiffs also allege that Kleine knew of Franklin's intent to make untrue and biased statements about Gardner during the announcement of the indictment and gave him permission to do so.    Compl. ¶¶38 and 44. Plaintiffs attempt to tie these claims together by claiming "Defendants" were aware of and discussed Franklin's statements to be made to the press on September 15, 2020, which allegedly deprived Gardner of his Sixth and Fourteenth Amendment rights. Compl. ¶64. Notably absent are any specific factual allegations about this alleged discussion that would suggest that Kleine and Franklin specifically agreed to violate Gardner's rights (which had not ripened as explained in Section I(A)). Instead, Plaintiffs' Complaint relies upon "mere speculation or conjecture" (*Mendoza, supra*) that Kleine "was aware of and partook in the conspiracy to deprive Jake Gardner his rights" and "had the power to prevent Franklin's statements." Compl. ¶¶106 and 109.[6] This is not enough to reasonably infer that Kleine intentionally entered into an agreement with Franklin to violate Gardner's constitutional rights. *See Johnson v. Perdue*, 862 F.3d 712, 718 (8th Cir. 2017) (affirming dismissal of conspiracy claim where the complaint "relie[d] on conclusory allegations that the defendants conspired 'through

---

[6] These conclusory allegations ignore the fact that state law dictates that Kleine have no involvement in the grand jury or subsequent prosecution given the appointment of Franklin as special prosecutor. *See* Neb. Rev. Stat. § 29-1408 and § 29-1409.

mutual decisions and correspondence' and 'acted in concert and with a mutual understanding'" which was insufficient to allege an agreement to violate the plaintiff's rights); *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 653 (8th Cir. 1989) (holding that even if the union knew that the city discriminated against female employees, that alone would be insufficient to hold a party liable as a conspirator and that communications between the union and city concerning personnel matters was insufficient to establish an agreement to conspire against employee). Even assuming Plaintiffs adequately allege the requisite meeting of the minds, their implicit legal conclusion that Kleine and Franklin possessed constitutionally culpable states of mind cannot be credited. The law requires a conspiracy toward an unconstitutional end (*Kelly, supra*), but no reasonable official in Kleine's position would have believed that Gardner's right to trial by impartial jurors even *could* be violated solely by Franklin's public statements. *See* Sections I A, B, and C, *supra*. For all of these reasons, Plaintiffs' civil conspiracy claim in the First Cause of Action should be dismissed.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER 42 U.S.C. § 1986.

Plaintiffs assert another conspiracy claim in their Sixth Cause of Action, which is brought pursuant to 42 U.S.C. § 1986.  Compl. ¶105. This section of the U.S. Code does not provide an independent cause of action. *Liscomb v. Boyce*, 954 F.3d 1151, 1155 (8th Cir. 2020). To state a claim for relief under § 1986, a conspiracy must actually exist under § 1985 and the defendant must have had actual knowledge of that conspiracy. *See* 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title ...."); *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("[I]n order to maintain her § 1986 action, appellant would have to prove that: ... [the defendant] had actual knowledge of a § 1985 conspiracy ...."). For the reasons stated above in Sections I and II, Plaintiffs have failed to

establish a claim for civil conspiracy. Thus, Plaintiffs cannot establish a § 1986 claim for failure to prevent a conspiracy to interfere with civil rights. Plaintiffs' Sixth Cause of Action should be dismissed.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR VIOLATION OF *BRADY V. MARYLAND.*

The Fourth Cause of Action is a "Constitutional Claim for *Brady* Rule Violation Against All Defendants Pursuant to *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics.*" Compl. p. 17.[7]  Plaintiffs claims that "Kleine ... intentionally and maliciously withheld exculpatory evidence from Jake Gardner in violation of the Jake's constitutional protection stemming from the *Brady* Rule." Compl. ¶88. This claim should be dismissed because Kleine did not prosecute Gardner and did not violate *Brady v. Maryland* by prejudicing Gardner's right to a fair trial. 373 U.S. 83, 83 S.Ct. 1194 (1963).

*Brady v. Maryland* makes clear that Fourteenth Amendment due process requires prosecutors to disclose evidence bearing on a criminal defendant's guilt or punishment in order to preserve a defendant's right to a fair trial. 373 U.S. at 87, 83 S.Ct. 1194. A criminal defendant's due process right to a fair trial is denied when this duty to disclose materially favorable evidence is violated. To prove a *Brady* violation, a party must show that: (1) the evidence at issue was favorable to the aggrieved party, either because it was exculpatory, or because it was impeaching; (2) the evidence was suppressed by the state, either willfully or inadvertently; and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999). To show "prejudice" for prong three, a party must prove that the undisclosed information was "material." *Id.* at 282,

---

[7] *Bivens* applies to claims against federal actors, and Plaintiffs pled that Kleine is sued in both his individual and official capacity as Douglas County Attorney. Compl. ¶13. Kleine is not a federal actor so any citation or argument made under *Bivens* by Plaintiffs in support of their Fourth Cause of Action is inapplicable.

119 S.Ct. 1936.  Plaintiffs bear the burden of establishing the prejudice necessary to satisfy the "materiality" inquiry.  *Id.*

Plaintiffs only allege that Kleine "withheld exculpatory evidence" (Compl. ¶88) – not *material* exculpatory evidence as required by case law.  There are no facts alleging what exculpatory evidence Kleine denied Gardner, if or why that evidence was material, or when the alleged violation occurred.  Similarly, there are no facts – not even a threadbare conclusion – that Gardner was prejudiced by Kleine's alleged denial of exculpatory evidence.  Without these basic facts as laid out in *Strickler*, the Complaint does not even contain the "threadbare recitals of the elements of a cause of action" for a *Brady* violation and is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," which is not enough to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Furthermore, *Brady* is a trial right, and Gardner never stood trial.  The Supreme Court has explained that "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure [of exculpatory evidence] was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Strickler,* 527 U.S. at 281, 119 S.Ct. 1936; *see also Cone v. Bell*, 556 U.S. 449, 470, 129 S.Ct. 1769 (2009) (confirming the verdict-based standard when evaluating Fourteenth Amendment due process right to exculpatory information).  Appellate

courts have held that whether a party was prejudiced by the suppression of material exculpatory evidence depends upon the verdict in a criminal proceeding.[8]  So has this Court:

> "[A] *Brady* violation […] occurs when the state has failed to provide a defendant with evidence favorable to her defense, and the suppressed evidence reasonably could have produced a different verdict.  In other words, an individual's Fourteenth Amendment right to exculpatory evidence is violated only if that individual is convicted."

*Cambara v. Schlote*, 2015 WL 5775766, at \*7 (D.Neb. Sept. 30, 2015) (J. Gerrard).  In this case, Gardner's constitutional right to a fair trial through the disclosure of material exculpatory evidence as required by *Brady* was not violated by Kleine because Kleine never took Gardner to trial, and Gardner was never convicted.  Therefore, the fact that Gardner never stood trial and was not convicted precludes Plaintiffs' Fourth Cause of Action.

For all of these reasons, Kleine is entitled to immunity on Plaintiffs' *Brady* claim.  When conducting an analysis of qualified immunity, courts ask whether the facts taken in a light most favorable to a plaintiff make out a violation of a constitutional right and, if the answer is no, the

---

[8] *See, e.g., Livers*, *supra*, 700 F.3d at 359 ("Assuming appellants failed to disclose exculpatory evidence, there was no *Brady* violation because Livers and Sampson were not convicted."); *Telzer v. Borough of Englewood Cliffs*, 783 Fed. Appx. 253, 258 (3rd Cir. 2019) (affirming the alleged withholding of evidence at suspect's criminal trial did not violate due process rights under *Brady* because suspect was acquitted); *Taylor v. Waters*, 81 F.3d 429, 436 fn 5 (4th Cir. 1996) (rejecting § 1983 plaintiff's claim that an officer's failure to divulge potentially exculpatory information violated Fourteenth Amendment due process because, in part, the plaintiff did not stand trial); *Jerome v. Crum*, 695 Fed. Appx. 935, 943 (6th Cir. 2017) (where a criminal proceeding ended in the prosecutor's request for, and the trial court's subsequent grant of, a *nolle prosequi* order, a § 1983 plaintiff cannot establish the required elements of a *Brady* claim); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (the withholding or destruction of evidence violates a criminal defendant's constitutional rights only if it resulted in the criminal defendant being denied a fair trial; where "all criminal charges were dismissed prior to trial[,] … courts have held universally that the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983"); *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) (a § 1983 plaintiff cannot establish materiality necessary for a *Brady* claim unless the case goes to trial and the suppression of exculpatory evidence affects the outcome); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) (no *Brady* violation where the criminal defendant "was never convicted and, therefore, did not suffer the effects of an unfair trial").

qualified immunity analysis need not proceed further.  *Ehlers*, *supra*, 846 F.3d at 1008.  The robust

case law garnered above show that a reasonable official in Kleine's position would not believe he

was violating *Brady* when Kleine was not the prosecutor of Gardner and Gardner never stood trial.

Therefore, the Fourth Cause of Action should be dismissed not only because Plaintiffs fail to state

a claim under *Brady*, but also because Kleine has qualified immunity.

**V.    PLAINTIFFS' FIFTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE THE COUNTY DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY AND PLAINTIFFS' FAIL TO SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR WRONGFUL DEATH.**

Regardless of whether Plaintiffs' bring their Fifth Cause of Action for Wrongful Death

under an intentional wrongful act theory or negligence theory, the claim against the County

Defendants cannot survive this motion to dismiss.

**A. The Court lacks subject matter jurisdiction to resolve Plaintiffs' Fifth Cause of Action because the County Defendants are entitled to sovereign immunity.**

Accepting Plaintiffs' allegations as true, Plaintiffs' Fifth Cause of Action for wrongful

death arises out of "Franklin's "false and misleading statements to the media […] by implying Mr.

Gardner's guilt, implying he was a racist, and inflaming the community regarding the case."

Compl. pp. 1-2.  "These recklessly biased and false statements by Defendant Franklin also caused

Jacob Gardner to lose all faith in the justice system and end his own life for fear of an unfair trial."

Compl. p. 2. Claims *arising out of* libel, slander, or misrepresentation are expressly excluded from

the limited waiver of sovereign immunity in the Political Subdivision Tort Claims Act (PSTCA).

Neb. Rev. Stat. § 13-910(7); *see also Britton v. City of Crawford*, 282 Neb. 374, 380, 803 N.W.2d

508, 514 (2011). While Plaintiffs do not specifically allege libel or slander against the County

Defendants, "the substance of the claim involves the communication of false statements, and as

such arises out of 'libel, slander, [or] misrepresentation.'" *York v. Dunning*, 8:16-CV-175, 2016

WL 3983261, at *4 (D. Neb. July 25, 2016); Compl. 1-2 and ¶¶ 3, 4, 6, 38, 40, 42- 44, 48, 52, 55,

56, 97-98 (Plaintiffs' repeated assertion of "false and misleading statements" by Franklin). Defamation by either libel or slander requires that a statement be false and tend "to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *JB & Associates, Inc. v. Nebraska Cancer Coalition*, 303 Neb 855, 864, 932 N.W.2d 71, 78 (2019). The very crux of Plaintiffs' allegations is that Franklin's comments were false and led Gardner to believe that he would never get a fair trial because those comments allegedly inflamed the community. Compl. pp. 1-2. No matter how Plaintiffs recast their allegations, their wrongful death claim arises out of allegedly slanderous statements. The PSTCA's intentional torts exception preserves sovereign immunity for claims arising out of libel, slander, and misrepresentation. Neb. Rev. Stat. § 13-910(7). Thus, as to the Fifth Cause of Action, the County Defendants are entitled to sovereign immunity and this Court lacks subject matter jurisdiction.

### B.  Plaintiffs fail to sufficiently allege negligence in their Fifth Cause of Action.

Even if this Court is not inclined to reach the issue of sovereign immunity at this stage in the proceeding, Plaintiffs have failed to sufficiently allege facts that would reasonably establish the elements of negligence. To the extent that Plaintiffs assert that the County Defendants were negligent in preventing Franklin's statements, the Complaint must still state facts sufficient to constitute that cause of action. *Brandon v. County of Richardson*, 252 Neb. 839, 842-843, 566 N.W.2d 776, 779 (1997). To prevail in a negligence action, a plaintiff must establish that the defendant owed a duty to protect the plaintiff from injury, a failure to discharge that duty (breach), and damages proximately caused by that breach. *Bell v. Grow With Me Childcare & Preschool LLC*, 299 Neb. 136, 146 907 N.W.2d 705 (2018). Here, Plaintiffs fail to identify what duty the County Defendants had to prevent Franklin's statements when Franklin was appointed as *special prosecutor*. Plaintiffs do not assert what control, if any, the County Defendants had over Franklin.

19

Aside from threadbare legal conclusions of apparent *Monell* allegations wherein the County Defendants are only vaguely mentioned (addressed below), Plaintiffs' Fifth Cause of Action only makes specific allegations against Franklin. This demonstrates that Plaintiffs have failed to sufficiently allege the elements of a cause of action for wrongful death against the County Defendants.

## VI.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR MUNICIPAL LIABILITY AGAINST DOUGLAS COUNTY PURSUANT TO § 1983.

Plaintiffs allege facially defective *Monell*-style claims against Douglas County throughout the Complaint. These claims are flawed for various reasons. First, municipal liability under § 1983 "attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292 (1986). The First, Second, Third, Fifth,[9] and Sixth Causes of Action conclude, without any factual support, that "Franklin and Kleine represent official policy and have final policymaking authority, attaching their wrongful acts as policy for Douglas County, Nebraska..." Compl. ¶¶63, 73, 85, 101, and 114. The identification of officials whose decisions represent the official policy of the local government unit is a legal question, and a legal analysis demonstrates that neither Kleine nor Franklin can establish Douglas County policy or custom in this case. *Dean v. County of Gage, Neb.*, 807 F.3d 931, 940 (8th Cir. 2015) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702 (1989)). To identify the final municipal policymaker, this Court should consult (1) state and local positive law, and (2) state and local custom or usage having the force of law. *Soltesz v. Rushmore Plaza Civic Center*, 847 F.3d 941, 946 (8th Cir. 2017) (citing

---

[9] The Fifth Cause of Action is for wrongful death. Compl. p. 18 and ¶95. Plaintiffs' inclusion of conclusory *Monell* language in this cause of action (Compl. ¶¶99-101) cannot state a plausible claim to relief when *Monell* applies only to constitutional violations and has no bearing upon a state law wrongful death claim.

*Jett*, *supra*).

In Nebraska, prosecutors cannot establish county policy because state law directs the prosecutions of state criminal law violations, making prosecutors agents of the State of Nebraska when engaged in the prosecution process. The Nebraska Legislature enacted the Nebraska Criminal Code, which defines criminal offenses, and determined the various purposes which it would serve. *See* Neb. Rev. Stat. §§ 28-101 – 28-102. The Legislature imposes upon county attorneys the duty to prosecute criminal violations, expressly directing all county attorneys "to appear in the several courts of the county and prosecute the appropriate criminal proceeding *on behalf of the state and county*." Neb. Rev. Stat. § 23-1201 (emphasis added). The Nebraska Constitution mandates that "[a]ll process shall run in the name of 'The State of Nebraska,' and all prosecutions shall be carried on in the name of 'The State of Nebraska.'" Neb. Const. Art. V, Sec. 24. Furthermore, the Nebraska Supreme Court – a state (not county) entity – regulates the practice of law and has enacted special rules for prosecutors. *State ex rel. Commission on Unauthorized Practice of Law v. Hansen*, 286 Neb. 69, 73, 834 N.W.2d 793, 796-97 (2013); Neb. Ct. R. of Prof. Cond. § 3-503.8. The Nebraska Supreme Court has not provided Nebraska county attorneys any ability to establish policies at odds with its special rules for prosecutors, including its rule about extrajudicial statements a prosecutor can make. Neb. Ct. R. of Prof. Cond. § 3-503.8(f). Read in conjunction with constitutional and statutory authority, it is clear that prosecutors act on behalf of the State of Nebraska because neither the Nebraska Legislature nor the Nebraska Supreme Court permit Douglas County any authority to establish policies at odds with their laws and rules. *See Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) ("[w]hether a county prosecutor is deemed a 'state official' depends, at least in part, on state law.") (*citing Mt. Healthy City Sch. Dist.*

*Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568 (1977)).

Plaintiffs cite case law that municipal policies may be set by those who speak with final policymaking authority (Compl. ¶¶62, 72, 84, 100, and 113), but do not address how, under Nebraska law, Franklin and Kleine are final policymakers for Douglas County.  Unlike Plaintiffs, "[f]ederal courts are not justified 'in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'" *Soltesz, supra*, 847 F.3d at 946 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S.Ct. 915 (1988)).  In this case, Franklin was not an employee of or official of Douglas County and Kleine was not the prosecutor of Gardner.[10]  State law does not vest either with municipal policymaking authority. *See*, *e.g.*, *Nielander v. Board of County Commissioners of County of Republic, Kansas*, 582 F.3d 1155 (10th Cir. 2009) (Kansas county attorneys act on behalf of the state, not their respective counties, so their actions are attributed to the state and cloaked with Eleventh Amendment immunity); *Cady*, *supra*, 574 F.3d at 345 (because prosecutor acted as an agent for the state in relation to release-dismissal agreement, his actions were not attributable to the county that employed him); *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (because defendant prosecutor was acting as an agent of the state when prosecuting plaintiff, his conduct cannot have established a county policy, unconstitutional or otherwise); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (although prosecutor was an employee of the City of Youngstown, § 1983 suit against prosecutor was not cognizable because she acted on behalf of the State of Ohio when prosecuting a criminal charge and plea bargaining).  For these reasons, liability cannot attach

---

[10] *See* FN 3, *supra*, explaining Franklin's role as special prosecutor is controlled by state law. Plaintiffs' pleading, state law, and public record is clear that Kleine did not conduct the grand jury and would not have prosecuted Gardner for the indictments coming from the grand jury.  This fact severs any causal connection between Kleine and Plaintiffs' alleged *Monell* claims.

to Douglas County based on the actions of prosecutors who act on behalf of the State of Nebraska.

Second, even if Plaintiffs identified a proper policymaker, they fail to state a claim for municipal liability. The Eighth Circuit has summarized the only ways municipal liability can attach to Douglas County as follows:

> "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. Policy and custom are not the same thing. A policy is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699–700 (8th Cir. 2016) (internal citations omitted). Beyond identifying a policy or custom that may be attributable to Douglas County, Plaintiffs "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997) (emphasis in original). In other words, they "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* This requires more than legal conclusions; there must be enough factual allegations to raise a right to relief above the speculative level. *Twombly, supra*, 550 U.S. at 555, 127 S.Ct. 1955.

Plaintiffs allege generally that Douglas County "created a wrongful, unconstitutional policy in allowing Defendant Franklin to make the wrongful statements which deprived Mr. Gardner of his rights and caused his death," "had an established policy or practice of not making

statements to the press which would materially impact an individual's right to a fair trial or due process of law," and "allowed a new policy or practice to be created through Defendant Kleine and Defendant Franklin, which allowed for unconstitutional actions against defendants in criminal cases which deny citizens of Douglas County the right to an impartial jury or due process of law." Compl. p. 2 and ¶¶23 and 45. These claims are nothing more than conclusory allegations that cannot survive a motion to dismiss. There are no facts before this Court reasonably inferring that Douglas County enacted or authorized a policy or custom that caused Gardner's alleged constitutional violations.[11]

Plaintiffs repeated statements that policies may be set by those who speak with "final policymaking authority" and concluding that Franklin and Kleine have that authority for Douglas County does not even amount to a formulaic recitation of the elements of a *Monell* claim to survive a motion to dismiss. *Iqbal, supra*, 556 U.S. at 679, 129 S.Ct. 1937 (threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient to survive a motion to dismiss). Similarly, using buzzwords like "policy," "practice," and "custom" does not create facial plausibility. Plaintiffs fail to state a "policy" claim because they do not allege that a final Douglas County policymaker made a deliberate choice to follow a course of action made from among various alternatives or that a policy for general "unconstitutional actions" was established by any other means. *See Rinne v. City of Beatrice*, No. 4:18CV3037, 2018 WL 4492227, *5 (D.Neb. Sept. 19, 2018) (granting Rule 12(b)(6) dismissal of policy claim). Plaintiffs also fail to state a "custom" (or "practice") claim because they do not allege facts indicating a

---

[11] As explained in Sections I – IV, there are no constitutional violations before this Court and, therefore, municipal liability cannot attach to Douglas County. *See Whitney v. City of St. Louis, Mo.*, 887 F.3d 857, 860-61 (8th Cir. 2018) (affirming dismissal because absent a constitutional violation on the part of a city employee, the city had no *Monell* liability and the complaint failed to allege any constitutional violation arising out of a municipal policy for *Monell* liability).

continuing, widespread, persistent pattern of unconstitutional misconduct by Douglas County employees, that the County's final policymakers had notice of a pattern of such unconstitutional misconduct, that after such notice, the policymakers tacitly authorized, or were deliberately indifferent to, the offending misconduct, and that this caused Gardner's alleged injury. *See id.* at *6 (granting Rule 12(b)(6) dismissal of custom claim).

Plaintiffs make allegations regarding an isolated incident involving only Gardner. Generally, an isolated incident of alleged misconduct cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal of failure to train and supervise claims that were supported only by plaintiff's own arrest and detention); *Calgaro v. St. Louis Cty.*, 919 F.3d 1054, 1059 (8th Cir. 2019) (affirming judgment on the pleadings for the county where plaintiff alleged legal conclusions to support *Monell* claim and only cited the single incident at issue, which was "insufficient to establish a custom or practice"); *Yusuf v. Weyker*, No. 16cv1012, 2017 WL 3425649, at *8 (D.Minn. Aug. 9, 2017) (dismissing custom claim because plaintiff did not allege well-pleaded facts that city officers fabricated evidence in other investigations, nor that policymaking officials in the department were aware of previous incidents of evidence fabrication). In sum, case law from this Court has made clear that Plaintiffs' conclusory *Monell* claims are not enough to infer Douglas County's liability and should be dismissed.

## CONCLUSION

For all of the reasons set forth above, the County Defendants respectfully state that Plaintiffs' claims against them should be dismissed in their entirety.

DATED this 12th day of November, 2021.

DONALD W. KLEINE, in his individual
and official capacity, and COUNTY OF
DOUGLAS, NEBRASKA, Defendants.

DONALD W. KLEINE,
Douglas County Attorney.

By:    /s/ Timothy K. Dolan
       Timothy K. Dolan #20978
       Meghan M. Bothe #25208
       Jimmie L. Pinkham III #25534
       Deputy County Attorneys
       909 Civic Center
       Omaha, NE 68183
       T – (402) 444-7622
       F – (402) 444-6817
       tim.dolan@douglascounty-ne.gov
       meghan.bothe@douglascounty-ne.gov
       jimmie.pinkham@douglascounty-ne.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that on November 12th, 2021, this brief complied with the word count limitation provided in NECivR 7.1(d)(1)(A) and further certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word and contains 8,767 words.

/s/ Timothy K. Dolan

## CERTIFICATE OF SERVICE

I hereby certify that on November 12th, 2021, I electronically filed the foregoing Brief in Support of County Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, including:

John M. Pierce
PIERCE, BAINBRIDGE LAW FIRM
355 Grand Street, 44th Floor
Los Angeles, CA 90071
jpierce@piercebainbridge.com

/s/ Timothy K. Dolan